Mark E. McDILLON,
Appellant/Counter
Plaintiff,

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, Appellee/Counter Defendant.

No. 45A04–0305–CV–237.

Court of Appeals of Indiana.

July 21, 2004.

Julie A. Dugan, Kopka, Pinkus, & Dolin, P.C., Crown Point, IN, James E. Foster, Funk & Foster, Hammond, IN, Attorneys for Appellant.

Edward P. Grimmer, Edward P. Grimmer, P.C., Crown Point, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Mark McDillon appeals the jury verdict awarding Northern Indiana Public Service Company ("NIPSCO") $12,440.29 for damages incurred as a result of McDillon's vehicle colliding with one of its utility poles. NIPSCO cross-appeals, claiming that the trial court erroneously set aside the default judgment entered against McDillon and erroneously granted McDillon's untimely demand for a jury trial. Because we find that the jury may have predicated its verdict on a nonparty instruction erroneously given to the jury, we reverse. Although NIPSCO argues that its default judgment should be reinstated if we reverse, we find that NIPSCO waived its challenge to the setting aside of the default judgment by failing to perfect a timely appeal. Additionally, contrary to NIPSCO's contention, we find that McDillon timely requested a trial by jury. Accordingly, we remand for a jury trial.

### Facts and Procedural History

McDillon called the Hammond Police Department at approximately 5:00 a.m. on Sunday, August 22, 1999, to report that his vehicle had been stolen from a gas station as he was inside purchasing a cup of coffee.[1] Approximately fifteen minutes later, an unidentified person called the Hammond Police Department to report that a vehicle had collided with a utility pole. As a result of this collision, there was a power outage in the area. When an officer arrived on the scene of the accident, he observed a vehicle with front-end damage, including a missing front passenger tire and flattened rim. Approximately twenty minutes later, McDillon arrived on the scene and informed the police that although he was the owner of the vehicle, he was not driving the vehicle at the time of the collision. McDillon explained to the officer that he had reported the vehicle stolen earlier that morning. No one, however, was ever apprehended for the theft.

NIPSCO owned the utility pole involved in the collision. The collision resulted in damage to three transformers, which caused NIPSCO to incur repair costs of $6,822.79. In accordance with company policy, NIPSCO attempted to recover its losses resulting from the collision from McDillon, first by sending three separate demand letters and then by turning the matter over to a collections attorney. McDillon failed to respond to any of these collection attempts. NIPSCO's attorney then initiated a lawsuit. A summons was personally served on McDillon, but he failed to appear for the hearing. On November 11, 2000, the trial court entered a default judgment against McDillon for $10,000—the court's jurisdictional limit—plus $2,274 for attorney fees and $100 in costs.[2] After receiving notice of the proceedings supplemental, McDillon filed a motion to set aside the default judgment, claiming excusable neglect and meritorious defense. The trial court set aside the default judgment, and McDillon subsequently filed his answer and counterclaim and demand for jury trial.

At the jury trial, McDillon testified that he was not driving his vehicle at the time it collided with the utility pole. He explained that his vehicle had been stolen from a gas station while he was inside getting a cup of coffee. McDillon prompt-

---

1. McDillon had left his keys in his vehicle as he went inside to purchase a cup of coffee.

2. Post-judgment interest was set at 8%.

ly reported his vehicle stolen. Officer Salvidor Bermudez, who took the stolen vehicle report, testified that as he was obtaining information from McDillon, a report of a vehicle being driven recklessly came across the radio. The vehicle described in the radio report matched McDillon's stolen vehicle. According to Officer Bermudez's testimony, there was a power outage moments later.

Following the presentation of evidence, the trial court instructed the jury, among other things, on nonparty liability under Indiana's Comparative Fault Act. The jury returned a verdict in favor of NIPSCO for $12,440.29. Because of the court's jurisdictional limits, the trial court entered judgment in favor of NIPSCO for $10,000.00, plus judgment interest. Appellant's Supp.App. p. 5–6. McDillon filed a motion to correct errors with the trial court, which claimed that the trial court erroneously instructed the jury and that the jury verdict was excessive. The trial court denied McDillon's motion to correct errors, and he now appeals. NIPSCO also cross-appeals.

### Discussion and Decision

McDillon raises two issues on appeal, one of which we find dispositive.[3] Specifically, McDillon argues that the trial court erroneously instructed the jury. NIPSCO cross-appeals, claiming that the trial court erroneously set aside the default judgment against McDillon and allowed the case to be tried to a jury when McDillon waived his right to a jury by failing to make a timely request. We address each party's contentions in turn.

### I. McDillon's Appeal

#### A. Jury Instructions

██ McDillon contends that the trial court erroneously instructed the jury.

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001). In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. *See Wal–Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind.2002), *reh'g denied; Whitney v. State*, 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Whitney*, 750 N.E.2d at 344. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Id.* We will consider jury instructions as a whole and in reference to each other, not in isolation. *Id.*

██ Included among the trial court's instructions to the jury was the following:

Jury Instruction # 13

You must decide NIPSCO's case on the basis of the Indiana law of comparative fault. The term "fault" refers to varieties of conduct that make a person responsible, in some degree, for property damage. NIPSCO has the burden of proving the following propositions by a preponderance of the evidence:

First: That Mr. McDillon was operating the car in an unsafe or negligent way,

---

3. Because we are reversing and remanding on the first issue, we need not address McDillon's remittitur argument.

without the reasonable care which is expected of every driver.

Second: That NIPSCO's property was damage[d]; and

Third: That the negligent act or omission of Mr. McDillon proximately caused the collision of his car with NIPSCO's pole and that resulted in the property damage NIPSCO suffered.

As I have stated, the Plaintiff must prove these propositions; the Defendant has no burden of disproving them.

However, the Defendant has claimed certain specific defenses, and the Defendant does have the burden of proving those defenses by a preponderance of the evidence. The Defendant claims that his car was stolen and has the burden of proving that by a preponderance of the evidence:

the name and identity of that [nonparty], sufficiently so that the person could have been joined as a defendant

If you conclude that there was a [nonparty] at fault, you will be requested to identify that person by name on your verdict form, and assign a percentage of fault against that [nonparty]. If the [nonparty] cannot be identified, the jury cannot assign a percentage of fault against the [nonparty].

Appellant's App. p. 4 (emphasis supplied). McDillon claims, however, that this is not a nonparty case, and therefore, the jury was improperly instructed.

■ Indiana's Comparative Fault Act provides that "[i]n an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty." Ind.Code § 34–51–2–14; see also Witte v. M.M. ex rel. Mundy, 800 N.E.2d 185, 189 (Ind.Ct. App.2003), reh'g denied, trans. denied. The burden of proof of a nonparty defense is upon the defendant, who must affirma-

tively plead the defense. Ind.Code § 34–51–2–15. The defendant also has the burden of identifying the nonparty to whom fault should be attributed. See Cornell Harbison Excavating, Inc. v. May, 546 N.E.2d 1186, 1187 (Ind.1989). If the nonparty is not identified, then the jury may not assign fault against the nonparty. See id.

In his answer, McDillon denied that he was operating the vehicle at the time it collided with NIPSCO's utility pole. Additionally, McDillon asserted the following:

McDillon, in the matter of an Affirmative Defense, asserts that on or about August 22, 1999, he was the victim of a car theft and the damage, if any, was caused by the thief.

\* \* \* \*

That as a second Affirmative Defense McDillon asserts that on or about August 22, 1999, he was not operating the vehicle which caused damage to the property of plaintiff.

Appellant's Supp.App. p. 17. At trial, McDillon clarified that he was claiming that because his car had been stolen, he was not the proximate cause of NIPSCO's pecuniary loss. In fact, McDillon cited Dillner v. Maudlin, 161 Ind.App. 204, 314 N.E.2d 794 (1974), to the trial court for the proposition that "the negligent leaving of the ignition keys in the automobile [by the vehicle's owner] could not be considered the proximate cause of injuries later resulting from the negligent operation of the stolen automobile by a thief." Id. at 795 (quotation omitted). In Indiana, there is a well-established policy that "[a]ll pleadings shall be so construed to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." Ind. Trial Rule 8(F). Based on the language used in what McDillon identifies as

his affirmative defenses, it is unclear whether he intended to plead a nonparty defense. However, in light of the record before us—which establishes that McDillon denied that he was operating the vehicle when it was involved in the collision and that he clarified that his "thief" defense went to proximate cause—and Indiana's policy of construing pleadings to do substantial justice, we find that McDillon did not raise a nonparty affirmative defense. Consequently, we conclude that the trial court erred by instructing the jury on the affirmative defense of nonparty. We must now decide whether such instructional error mandates reversal.

■ The facts here show that as McDillon was standing face-to-face with an officer reporting his vehicle as stolen, a dispatch came over the officer's radio regarding a report of reckless driving. The description of the vehicle being driven recklessly matched the description of McDillon's stolen vehicle. A few moments later, there was a power outage. Thereafter, the police found McDillon's vehicle crashed into a utility pole. This evidence indicates that McDillon was neither operating the vehicle at the time of the collision nor the proximate cause of NIPSCO's damages. Nonetheless, the jury returned a verdict in favor of NIPSCO. Because we are unable to discern whether the jury ruled in favor of NIPSCO because it disbelieved this evidence or because McDillon failed to identify the person who stole his vehicle, we cannot say that the jury did not predicate its verdict on this erroneously given nonparty instruction.[4] Accordingly, we reverse and remand for a new trial. Because we are reversing and remanding for a new trial,

we must address the two issues that NIPSCO raises in its cross-appeal.

## II. NIPSCO's Cross–Appeal

### A. Setting Aside of Default Judgment

■ In its cross-appeal, NIPSCO first argues that the trial court abused its discretion by setting aside the default judgment entered against McDillon. Once entered, a default judgment may be set aside because of mistake, surprise, or excusable neglect so long as the motion to set aside the default is filed not more than one year after the judgment and the moving party also alleges a meritorious claim or defense. Ind. Trial Rule 55(C), 60(B); *see also Coslett v. Weddle Bros. Constr. Co.*, 798 N.E.2d 859, 861 (Ind.2003). A ruling denying or granting relief on a motion to set aside a default judgment is deemed a final judgment. T.R. 60(C); *Coslett*, 798 N.E.2d at 861. Here, following the trial court's May 15, 2001, Order setting aside the default judgment against McDillon, NIPSCO failed to perfect an appeal as required by Indiana Appellate Rule 9. *See* Ind. Appellate Rule 9 (requiring a Notice of Appeal to be filed with the trial court clerk within thirty days after the entry of final judgment). Thus, NIPSCO waived any error in the trial court's setting aside of the default judgment and may not now appeal that determination.

### B. Request for Trial by Jury

■ NIPSCO additionally argues that McDillon waived his right to a jury trial by failing to file a timely demand. In a civil case, a demand for a jury trial must be made by the requesting party no later than ten days after the first responsive pleading is due. Ind. Trial Rule 38(B).

---

4. Because we cannot say that the erroneously given instruction did not impact the jury's determination of the counterclaim, we find that McDillon should be able to pursue his counterclaim on remand.

This ten-day period applies whether the responsive pleading is mandatory or merely permissive. T.R. 38(B); *Smith v. Washington,* 716 N.E.2d 607, 616 (Ind.Ct. App.1999), *vacated in part on other grounds by* 734 N.E.2d 548 (Ind.2000). The failure of a party to serve a demand as required by Trial Rule 38(B) constitutes a waiver of the party's right to a trial by jury. *Id.* Furthermore, Trial Rule 38(D) provides that the trial court shall not grant an untimely demand for a jury trial except upon the written agreement of all the parties to the action.

NIPSCO filed its Complaint against McDillon on October 5, 2000. McDillon failed to respond, and the trial court granted NIPSCO a default judgment. McDillon moved the trial court to set aside the default judgment against him. On May 15, 2001, the trial court issued an Order setting aside the default judgment, which was served upon the parties by U.S. Mail. Thus, we treat NIPSCO's Complaint as if it had been filed on May 15, 2001. *See Wright v. Paraservices, Inc.,* 726 N.E.2d 1263, 1265 (Ind.Ct.App.2000) ("If the clock were not reset after a default judgment had been set aside and timeliness were still measured from service of the complaint, every pleading filed subsequent to the court setting aside a default judgment would be untimely.... [O]nce the default judgment [has] been set aside, the parties in essence [sit] in the same position they were in when the complaint was initially filed.").

Indiana Trial Rule 6(C) requires a responsive pleading to be served within twenty days after service of the prior pleading. Because the trial court served its May 2001 Order upon the parties by mail, the time within which McDillon's responsive pleading was due was extended by three days. *See* Ind. Trial Rule 6(E). Therefore, McDillon's response was due on June 7, 2001. On June 4, 2001, McDillon filed a Motion for Two Week Enlargement. The two-week enlargement of time made McDillon's Answer due on June 21, 2001. On June 29, 2001, McDillon filed his jury demand. This was within ten days of when his responsive pleading was due. Consequently, we find that McDillon did not waive his right to a jury trial.

Reversed and remanded.

SULLIVAN, J., and MAY, J., concur.