# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 24 2015, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John K. Henning
Ogletree Deakins Nash Smoak & Stewart P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

Clint A. Zalas
David E. Ballard
Lee, Groves & Zalas
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Amit Shah and Tim Dugle,

*Appellants-Plaintiffs,*

v.

Apex Pallet, Inc., Duro, Inc. d/b/a Recycled New Pallets, Duro Realty, Inc., Duro Transport, Inc., and Terry Rodino,

*Appellees-Defendants*

November 24, 2015

Court of Appeals Case No. 44A05-1503-PL-115

Appeal from the LaGrange Circuit Court

The Honorable J.S. Vanderbeck, Judge

Trial Court Cause No. 44C01-1102-PL-00002

**Bailey, Judge.**

# Case Summary

Plaintiffs-Appellants Timothy J. Dugle ("Dugle") and Amit Shah (collectively, "Shah") appeal the grant of a motion to dismiss made by Defendants-Appellees Apex Pallet, Inc., Duro, Inc. d/b/a Recycled New Pallets ("Recycled New"), Duro Realty, Inc., Duro Transport, Inc., and Terry Rodino ("Rodino").[1] Shah presents the sole issue of whether the trial court properly dismissed Shah's Second Amended Complaint as untimely.[2] We reverse.

# Facts and Procedural History

Accepting as true the facts alleged in the complaint,[3] Dugle and Shah acquired minority shares in closely-held corporations in which Rodino is a majority shareholder. In 1997, Dugle invested in Duro, Inc. d/b/a Lee Wood Products

---

[1] The defendants are at times collectively referred to as "Rodino."

[2] Shah also articulates an issue as to the propriety of the trial court's dismissal of Shah's First Amended Complaint. However, Shah is estopped from raising this issue because Shah's counsel expressly agreed to dismissal, subject to leave to amend. At a hearing on October 14, 2014, counsel stated:

> For purposes of the Motion to Dismiss, we have no problem if the court enters a motion granting it with leave to amend the complaint, which is exactly what the federal court did and then we will provided [sic] the same claims that are pending in federal court and then the parties can brief whether the case is going to go forward in federal or state court.

(App. at 523.) Error invited by a complaining party is not reversible error. *Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002).

[3] *See Arflack v. Town of Chandler*, 27 N.E.3d 297, 302 (Ind. Ct. App. 2015) (observing that a trial court is not required to make determinations of fact in ruling upon a motion to dismiss, and thus – for purposes of review – this Court accepts as true the facts alleged in the complaint).

("Lee Wood Products") and in 2000, he invested in Recycled New. These entities are located in Elkhart, Indiana, and make or sell wood pallets.

[3] In 2003, Rodino began to engage in a series of activities that froze out the minority shareholders. Dugle's employment with the Duro entities was terminated and he has received no distribution since 2003. In 2004, Dugle attempted to transfer his shares to Shah, and Rodino objected. After several years of pending litigation, Rodino agreed to the stock transfer. As of 2008, Shah owned 48% of the shares of Recycled New and of Duro Realty, Inc., and 22% of the shares of Lee Wood Products. He, like Dugle, did not receive anticipated distributions.

[4] Meanwhile, Rodino formed a competing pallet business called Apex Pallet. Apex Pallet does not have independent staff or physical premises. Allegedly, Apex Pallet is a shell corporation to which Rodino has siphoned substantial business opportunities and monies rightfully belonging to the entities in which the minority shareholders have an interest. Further, Rodino has allegedly exerted unfettered control over all profits of the closely-held corporations in which he holds a majority interest, has paid himself significant salaries, used large sums to pay for personal and family expenses, and taken extreme measures to avoid financial transparency.

[5] The instant litigation began in 2004, when Dugle filed a complaint against Rodino, Duro, Inc., Duro Transport, Inc., Duro Recycling, Inc. and Duro Realty, Inc. In 2007, partial summary judgment was granted to Rodino and the

corporate entities. In 2010, Shah filed an Application for Court Order to Inspect Corporate Records, requesting financial records of some of the Duro entities for the purpose of conducting a forensic accounting. On September 1, 2011, Shah filed a complaint for damages against Lee Wood Products, Recycled New Pallets, Duro Realty, Inc., Duro Transport, Inc., and Rodino. In part, Shah alleged that Rodino had breached fiduciary duties owed to minority shareholders in closely-held corporations.

[6] On December 21, 2012, Shah filed an amended complaint adding Apex Pallet as a defendant. He was granted leave to conduct the requested forensic accounting. On May 22, 2013, the cases were consolidated. Ultimately, the plaintiffs sought damages, dissolution of the closely-held corporations, or appointment of a receiver.

[7] Also in May of 2013, Rodino filed a motion to dismiss. Apex Pallet, Inc. filed a separate motion. The defendants contended that the complaint against them stated claims only for damages sustained by corporations and that individual shareholders lacked standing to bring a derivative action. On October 14, 2014, the trial court conducted a hearing on the motion to dismiss. For reasons not made evident by the record, the forensic accounting had not been completed and a receiver had not been appointed.[4]

---

[4] A financial manager had been appointed on December 28, 2012, to conduct the forensic accounting and report to the court.

At the dismissal hearing, plaintiff's counsel acquiesced to dismissal, subject to a grant of leave to amend the consolidated complaint. The hearing was concluded and "the court [took] all pending matters under advisement." (App. at 21.) The chronological case summary reflects that, on October 16, 2014, an order was entered. The order, dated October 15, 2014, provides in pertinent part:

> The issue within the Motion [to] Dismiss is whether the individual minority shareholders have standing to bring a direct cause of action for damages to a corporation.

> Plaintiffs filed a similar case against the Defendants in the United States District Court for the Northern District of Indiana. … The Federal Court granted a similar Motion to Dismiss, dismissing the complaints of the Plaintiff, on March 24, 2014.

> The Court adopts the analysis provided by the U.S. District Court ruling, a copy is attached and labeled Exhibit 1.

> This Court now declines to allow the Plaintiff to bring the derivative claims against the Defendants in a direct action.

> All Plaintiff claims as presented shall be dismissed, without prejudice.

> However, … it would be most equitable to allow the Plaintiff to refile the complaint in this cause number, if they so choose, under the following conditions:

> 1. Plaintiffs are hereby granted thirty (30) days to refile the complaint. The leave to amend the complaint extends only to

claims against the Defendants listed in the complaint as it now exists before this Court and to those claims and issues that presently have been plead [sic]. If the Plaintiffs desire to add new claims and/or new Defendants, they must seek leave of the Court to do so.

(App. at 33-34.) The order further provided that multiple discovery motions were now "rendered moot." (App. at 34.)

On November 17, 2014, Dugle and Shah filed a Motion for Leave to File Second Amended Complaint. The defendants moved for dismissal with prejudice, contending that the amended complaint was untimely filed. On February 18, 2015, the trial court entered an order granting the motion to dismiss, concluding that Dugle and Shah did not comply with the thirty-day deadline set forth by the court. This appeal ensued.[5]

# Discussion and Decision

The trial court granted Rodino's motion to dismiss solely upon the grounds that Shah's motion for leave to file a second amended complaint was "not timely filed with the court" consistent with the previously-ordered thirty-day time period. (App. at 51.) According to the trial court, the thirty-day period was triggered on October 15, 2014 and Indiana Trial Rule 6(E) did not extend the

---

[5] A motion for reconsideration was denied by the trial court after the instant appeal was initiated.

thirty-day response time by three days.  By the trial court's calculation, Shah's filing was one business day too late.[6]

[11]  In disposing of the motion to dismiss, the trial court made purported "findings of fact" and "conclusions of law."  In pertinent part, the trial court stated that a hearing had been held on October 14, 2014; that the court had signed the order granting the motion to dismiss with leave to amend on October 15, 2014; and the October 15, 2014 order was issued "in open court."  (App. at 50.)  In reliance upon *McDillon v. N. Ind. Pub. Serv. Co.*, 841 N.E.2d 1148 (Ind. 2006), the trial court concluded that the automatic three-day extension of time provided by Trial Rule 6(E) did not operate to extend the thirty-day window for filing.  That rule states:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by United States mail, three (3) days shall be added to the prescribed period.

[12]  In *McDillon*, our supreme court considered whether "[Rule 6(E)] properly applies to extend the commencement of deadlines following all court orders, including those deadlines triggered by the entry of an order or happening of an event, or only by those deadlines that are triggered by service of a court order." 841 N.E.2d at 1150-51.  The Court clarified that Rule 6(E) "does not apply to

---

[6] Counting thirty days from October 15, 2014, the filing would have been due thirty days later, on Friday, November 14, 2014.  Shah filed on Monday, November 17, 2014.

extend periods that are triggered by the mere entry of the order or the happening of an event other than the service of notice or other paper." *Id.* at 1152.

[13] "It is elementary that the court speaks only through its official records, the primary one being its order book." *Blum's Lumber & Crating, Inc. v. James*, 285 N.E.2d 822, 824 (Ind. 1972). Litigants are to be charged with notice "with what they hold" as well as "that which may be properly entered." *Id.* Litigants are not charged with notice of "the uncommunicated thoughts of the judge." *Id.* The order at issue in this case was, according to the CCS, entered on October 16, 2014. It appears that the trial court had signed the order one day earlier, and we glean from the trial court's "findings of fact" that the trial court believed the parties had been apprised of the order "in open court." (App. at 50.) If so, this would arguably be "an event other than service" recognized as a trigger in *McDillon*, 841 N.E.2d at 1152.

[14] However, the record does not support the notion that the litigants were given notice of the trial court's decision in open court. According to the CCS, on October 14, 2014, the trial court conducted a hearing and took the issue of dismissal "under advisement." (App. at 21.) Consistent with that, the transcript of that hearing indicates that the hearing was adjourned without an order being issued. As for claimed opportunity for open-court notice on October 15, 2014, the CCS reflects no such hearing date. Indeed, the Court Reporter filed a notice indicating that no transcript was available for October 15, 2014, for the reason that "no hearing was set" for October 15, 2014. (App.

at 784.)  There is no indication of chargeable knowledge to Shah prior to the trial court's entry of its order.

The order was entered on October 16, 2014.  Thirty days from that date was Saturday, November 15, 2014.  In this circumstance, our trial rules provide for filing on the next business day.  Indiana Trial Rule 6(A)(1).  That was Monday, November 17, 2014.  Shah's filing was timely.[7]

# Conclusion

The trial court erred by granting Rodino's motion to dismiss with prejudice.

Reversed.

---

[7] Rodino has suggested that, even if Shah's complaint survives a timeliness challenge, it is futile to proceed because the language of the complaint inextricably intertwines allegations suggesting direct shareholder claims with those suggesting derivative shareholder claims and Rodino cannot adequately discern and respond to the allegations against it.  The majority shareholder owes a fiduciary duty to the minority shareholders, and "must deal fairly, honestly, and openly with the corporation and other shareholders." *Lees Inns of Am., Inc. v. William R. Lee Irrevocable Trust*, 924 N.E.2d 143, 157 (Ind. Ct. App. 2010).  In an action involving a closely-held corporation, the court may exercise its discretion to treat an action raising derivative claims as a direct action.  *Barth v. Barth* 693 N.E.2d 954, 957 (Ind. Ct. App. 1998).  However, to the extent that an argument presented is that the majority shareholder breached his fiduciary duty toward the minority shareholder individually, the claim is not derivative, and is outside the general rule that a shareholder may not maintain a direct action in his or her own name to redress an injury to the corporation.  *Id.* at n. 2.

The Second Amended Complaint asserts numerous breaches of this fiduciary duty owed to the minority shareholders individually.  The complaint is extremely lengthy and portions may fairly be said to be inartfully drafted.  However, it is clear that the complaint alleges that Rodino froze out minority shareholders, systematically converted funds to his personal use, refused to provide proper accounting, refused to properly distribute dividends, and utilized a shell corporation to divert business opportunities and income from those entities in which the minority shareholders held shares.  To a large extent, the length of the complaint is simply consistent with the numerous alleged incidents of breach of fiduciary duty.  A clear prayer for relief is made, in that the plaintiffs alternatively request damages, appointment of a receiver, or dissolution.  In other words, the complaint does not wholly fail to state a claim upon which relief can be granted, taking the averments as true for purposes of a motion to dismiss and considering no extraneous materials such as affidavits.

Baker, J., and Mathias, J., concur.